UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SEG LIQUIDATION COMPANY, LLC, )
an Illinois Limited Liability Company, )
both individually and as assignee of Fifth )
Third Bank to certain loan agreements )
and commercial security agreements, )
and Thomas E. Lesko, )
                                      )   07 C 3456
             Plaintiffs, )
                                      )
vs. )
                                      )
HUGO M. STEVENSON, )
                                      )
             Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Plaintiffs Thomas Lesko and SEG Liquidation LLC to strike four of Defendant Hugo Stevenson's affirmative defenses pursuant to Fed. R. Civ. P. 12(f). For the reasons set forth below, the motion is granted.

## BACKGROUND

In February 2002, Stevenson founded Stevenson Entertainment Group, LLC ("SEG") in Colorado.[1] SEG engaged in the development, manufacture, marketing, and

---

[1] Except where otherwise noted, the facts recited herein are derived from the amended complaint and uncontroverted affidavits filed by the parties in conjunction
(continued...)

distribution of toys and collectibles. In November 2002, TMLR LLC, a company of which Lesko and Michael Romano were members, purchased an interest in the company. According to Stevenson, Lesko stated that he would provide SEG with capital and financial resources for SEG's business without requiring the same from Stevenson.

Lesko and Romano obtained financing for SEG from Fifth Third Bank in the form of business loans and security agreements totaling $1.2 million in principal. In his affirmative defenses, Stevenson alleges that he had no involvement in that process. He contends that Lesko and Romano procured the loans from Fifth Third by supplying financial and other information that was materially false, including claims that collateral molds and tooling that belonged to licensors rather than being the property of SEG, falsely inflated sales projections, and understated royalties payable.

Lesko guaranteed two of the loans from Fifth Third to SEG: one for $375,000 and another for $450,000. Stevenson was also a guarantor of each of these loans, pursuant to separate agreements with Fifth Third. According to Stevenson, Lesko told him that his signing of personal guaranties was a perfunctory formality and that Stevenson would not later be required to fulfill his obligations as a guarantor.

---

[1](...continued)
with a previously filed motion. *SEG Liquidation Company LLC v. Stevenson*, No. 07 C 3456, Docs. 11, 16, 18, 20, 22.

Additionally, on two occasions in 2003, Stevenson borrowed money from SEG and executed two promissory notes for repayment of those sums.

According to Stevenson, Lesko controlled the business and caused SEG to fail by failing to generate royalty reports with regard to licensors, failing to make royalty payments to licensors, allowing licenses to lapse, and damaging SEG's business relationships. Stevenson insists that he was initially and for significant time periods unaware of Lesko's activities. He avers that, during the period of Lesko's involvement, he relied upon Lesko to run SEG properly and profitably. He claims that he voiced objections to Lesko after he found out about his activities, but Lesko persisted in his misconduct.

In 2006, SEG defaulted on various loan obligations to Fifth Third; Lesko paid the full amount of $825,000 that he and Stevenson had guaranteed. Fifth Third subsequently assigned its rights under the remaining loans to Plaintiff SEG Liquidation, LLC, of which Lesko is the sole member. At a later public sale, SEG Liquidation purchased all of SEG's assets, including Stevenson's promissory notes.

SEG Liquidation and Lesko sued Stevenson in a three-count complaint.[2] Count I alleges that Stevenson breached his contract with SEG by failing to honor his obligations as a guarantor. Count II alleges a common-law contribution claim by Lesko

---

[2]The complaint was later amended to address deficiencies in the allegations of federal jurisdiction.

against Stevenson for half of the amount Lesko paid to Fifth Third as coguarantor of the loans. In Count III, SEG Liquidation seeks enforcement of the two unpaid promissory notes from SEG's loans to Stevenson.

Stevenson's answer originally contained a counterclaim, seven affirmative defenses to Count I, six affirmative defenses to Count II, and one affirmative defense to Count III of the amended complaint. SEG Liquidation and Lesko moved to dismiss the counterclaim under Fed. R. Civ. P. 12(b)(6) and to strike several of the affirmative defenses asserting setoff, estoppel, material increase in risk, and unclean hands under Fed. R. Civ. P. 12(f).

In February 2008, Stevenson voluntarily dismissed his counterclaim as well as one of his affirmative defenses. This decision mooted the motion with regard to those aspects of his responsive pleading, and our consideration herein is correspondingly limited to the motion to strike the four remaining affirmative defenses Lesko and SEG Liquidation have challenged.

**LEGAL STANDARD**

Fed. R. Civ. P. 12(f) permits a court to strike defenses that are insufficient on the face of the pleadings. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Because motions to strike can be used as delay tactics, they are generally not a favored part of motion practice. *See, e.g., U.S. v. 416.81 Acres of*

*Land*, 514 F.2d 627, 631 (7th Cir. 1975). However, if legal implications can be drawn from uncontroverted facts within the pleadings, such motions can be useful tools to examine sufficiency of asserted defenses. *See id.* When presented with a motion to strike a defense as insufficient, a court must examine whether the challenged defenses raise substantial questions of law or fact. *See id..* If they do, the motion is not meritorious. Moreover, if on the face of the pleadings it appears that a set of facts could be proven that would establish the defense, the party asserting the defense must be provided an opportunity to prove the allegations. *See id.* Under current Supreme Court jurisprudence, the challenged assertion must be above the level of speculation and articulate a plausible set of underlying facts. *See Bell Atlantic Corp. v. Twombly,* — U.S. —, 127 S. Ct. 1955, 1965 (2007).

With these principles in mind, we turn to the motion at hand.

## DISCUSSION

The motion takes aim at four affirmative defenses advanced against the claims set out in Counts I and II of the amended complaint. Specifically, one asserts estoppel, two assert material increase in risk, and one relies upon the doctrine of unclean hands.

### A. Estoppel

The first challenged affirmative defense asserts that Lesko should be estopped from pursuing contribution from Stevenson of half of the payment Lesko made to Fifth

Third pursuant to the guaranties. Estoppel precludes one party from pursuing a claim against a second party when the first knowingly misrepresents or conceals a material fact intending or expecting that the second party changes position for the worse in reliance upon the misinformation. *Geddes v. Mill Creek Country Club, Inc.*, 751 N.E.2d 1150, 1157 (Ill. 2001). The party asserting estoppel must have actually relied on the representation while being unaware that it was untrue and having no reasonable way of determining the truth. *Id.* Finally, the party asserting the defense must face prejudice if it is not applied. *Id.* Estoppel can arise from silence as well as affirmative representations, if the party remaining silent has a duty to speak. *Id.* at 1157 n.1.

Stevenson alleges that Lesko made three separate misrepresentations that require him to be estopped from pursuing his contribution claim. First, he contends that, in order to secure certain loans, Lesko knowingly misrepresented to Fifth Third that SEG owned certain assets that it did not in fact own and provided false information about sales projections and royalty payments. Even assuming that this is true, the party in a position to detrimentally rely upon this information is Fifth Third, not Stevenson. Because he could not establish any plausible set of facts that would show he received this alleged misinformation and changed his position in reliance on it, this asserted basis is not sufficient to estop Lesko from advancing his contribution claim.

Second, Stevenson claims that Lesko misrepresented the extent of Stevenson's liabilities as a guarantor. He alleges that Lesko told him that his liabilities under the guaranties were only formalities rather than obligations he may have to fulfill. In essence, he claims that he was unaware that he would be held to the terms of the guaranties that he signed. This is an insufficient foundation for an estoppel defense; the language of the guaranties provided Stevenson with a reasonable and easily accessible way of divining his legal obligations to Fifth Third in the event of a default on the loans at issue. Even assuming that Stevenson did not in fact realize the extent of his responsibility as a guarantor, estoppel does not permit a party to transfer the responsibility for his or her own willful ignorance to another. *Vail v. Northwestern Mut. Life Ins. Co.*, 192 Ill. 567, 570 (1901). Consequently, these allegations will not support a defense of estoppel.

Finally, Stevenson avers that Lesko tricked him into believing that he would run SEG in a proper and profitable manner and his alleged failure to do so prevented Stevenson from leaving the company before its eventual demise and led to Stevenson's liability for the defaulted guaranteed loans. Neither position holds any water.

First, the estoppel defense is asserted only against Lesko's contribution claim, which in turn is predicated on Stevenson's status as coguarantor of the $825,000 in loaned funds. The guaranties were not dependent on Stevenson's continued

involvement with SEG, so even if Stevenson had jumped ship, he would not have been relieved of his obligations as a guarantor. Accordingly, his position did not change for the worse as a result of Lesko's purported actions.

For the second theory to be plausible, Stevenson's signing of the guaranties in the first instance would have had to be predicated on one of two things: either by Lesko affirmatively convincing him that the loans would never go into default or by a belief of which Lesko had a duty to disabuse him that the loans would never go unpaid. Stevenson has alleged neither of these things. Moreover, guaranties are necessarily predicated on the notion that a debtor may default on loan obligations; otherwise there would be no need for a guarantor to assure payment. Thus, Stevenson's decision to enter into the guaranties was not taken in reliance upon any misstatement or wrongful silence on Lesko's part, making the defense of estoppel unavailable to Stevenson.

Accordingly, the assertions advanced in support of this affirmative defense are insufficient to estop Lesko from pursuing a contribution claim against Stevenson, and the second affirmative defense to Count II is correspondingly stricken.

## B. Material Increase in Risk Undertaken

Stevenson next asserts a defense of material increase in risk against both Lesko and SEG Liquidation. The essence of this defense is that a guarantor is released from guaranty obligations if, without the guarantor's consent, the creditor makes a material

change that renders the performance required materially different from what was originally agreed upon. *McLean County Bank v. Brokaw*, 519 N.E.2d 453, 458 (Ill. 1988). A change is material if it substantially increases the risk of loss to the guarantor such that the guarantor would not normally "tolerate a substituted increase in risk without seeking something in return." *Roels v. Drew Indus., Inc.*, 608 N.E.2d 411, 414 (Ill. App. Ct. 1992).

In both defenses, Stevenson alleges that Lesko caused a material increase in his risk as a guarantor of SEG's debts to Fifth Third through his conduct in running SEG. In essence, Stevenson claims that his guaranty obligations did not include covering defaults caused by mismanagement of the company. However, the agreements make no such distinction; instead, they are couched in terms of an "absolute and unconditional" obligation, and there is no allegation that the guaranteed amounts increased beyond what Stevenson agreed to cover. As a result, the risk of default Stevenson assumed remained constant from the time he signed the guaranties to the time when his obligations were triggered. Accordingly, the allegations of material increase in risk are insufficient, and the motion to strike the third affirmative defense to Count II and fifth affirmative defense to Count I is granted.

## C. Unclean Hands

The doctrine of unclean hands rests on the notion that those seeking equity cannot have acted in an inequitable fashion but must instead approach the court with

hands unsullied by their own wrongdoing. *Fair Automotive Repair, Inc. v. Car-X Service Systems, Inc.*, 471 N.E.2d 554, 558 (Ill. App. Ct. 1984). A party seeking equitable relief may be denied relief if that party has engaged in misconduct, fraud or bad faith toward the party he or she is now suing, if the misconduct involved the same transaction that is at issue in the suit. *Long v. Kemper Life Ins., Co.*, 553 N.E.2d 439, 441 (Ill. App. Ct. 1990); *Cole v. Guy*, 539 N.E.2d 436, 442 (Ill. App. Ct. 1989). Misconduct that is not directed at the other party or that is tangential to the transaction at issue will not be considered directly connected. *Compare Makela v. Roach*, 492 N.E.2d 191 (Ill. App. Ct. 1986) (barring wife who retained attorney to defraud husband's creditors from pursuing legal malpractice action after plan backfired) *with Hill v. Names & Addresses, Inc.*, 571 N.E.2d 1085 (Ill. App. Ct. 1991) (holding doctrine did not prevent employer who had attempted to enforce illegal restrictive covenant from seeking relief for misappropriation by former employee that was unrelated to covenant).

In the main complaint, Lesko asserts a contribution claim against Stevenson for half of the payments Lesko made to Fifth Third on the loan amounts Lesko and Stevenson both guaranteed. The transactions at issue in that claim are Stevenson's execution of the guaranties and Lesko's payments to Fifth Third after SEG defaulted. Stevenson does not allege any misconduct on Lesko's part with respect to those transactions. Instead, he points to his claim that Lesko mismanaged SEG, thereby causing the business to fail, and that the failure of SEG in turn resulted in Stevenson's

liability. While these events are related, they are not intertwined to the degree that they would be considered part of the same transaction. *See Makela*, 492 N.E.2d at 195.

Lesko was not a party to the guaranties executed between Stevenson and Fifth Third, and there is no allegation that his alleged mismanagement played any part in Stevenson's decision to assume that obligation. Accordingly, Stevenson has failed to sufficiently state an affirmative defense of unclean hands, and the motion to strike that defense is granted.

## CONCLUSION

Based on the foregoing analysis, the motion to strike is granted.

/s/ Charles P. Kocoras

Charles P. Kocoras
United States District Judge

Dated: MAR - 6 2008